## In the District Court of the United States
## For the District of South Carolina

### BEAUFORT DIVISION

| | | |
|---|---|---|
| Lewis Anthony Washington, #264390, | ) | |
| | ) | Civil Action No. 9:07-3145-HFF-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| State of South Carolina and | ) | **OF THE MAGISTRATE JUDGE** |
| Anthony Padula, Warden of | ) | |
| Lee Correctional Institution, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.   INTRODUCTION

The Petitioner, Lewis Anthony Washington ("Petitioner" or "Washington"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254.  By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  This case is before the undersigned United States Magistrate Judge pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The above-named Respondent has filed a motion for summary judgment in this case [17], and therefore this Report is prepared for review by the District Court.

## II.   *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28

U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

   *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present Petition.

### III.    PROCEDURAL HISTORY IN STATE COURT

#### A.  Proceedings in the Court of General Sessions

The Dorchester County Grand Jury indicted Petitioner at the July 1999 term of court for two counts of Armed Robbery (99-GS-18-719 and 720).  Petitioner was represented by Gene Dukes, Esquire on these charges.  On February 15, 2000, Petitioner's case was called for trial before the Honorable Luke Brown and a jury.  The jury found Petitioner guilty and he was sentenced by Judge Brown to confinement for a period of thirty (30) years for each offense, to be served concurrently.

Petitioner timely served and filed a notice of appeal.  Aileen P. Clare, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented Petitioner on appeal. On November 28, 2000, Ms. Clare filed a Final Brief of Appellant, in which she presented the following issue for review:

> Did the trial court err by refusing to grant appellant's motion for directed verdicts of not guilty?

The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. *State v. Washington*, Op. No. 2001-UP-113 (S.C. Ct. App. filed February 24, 2001).  The remittitur was handed down on March 10, 2001.  Rehearing was not sought in the S. C. Court of Appeals and certiorari was not sought to the South Carolina Supreme Court.

#### B.  Petitioner's Application for Post-Conviction Relief

On January 11, 2002, the Petitioner filed a *pro se* post-conviction relief ("PCR") application (*Washington v. State*, 2002-CP-18-32) (App. pp. 249-276), in which he alleged numerous claims of ineffective assistance of counsel and subject matter jurisdiction.  The Petitioner made an amended *pro se* application on May 20, 2002.  (App. pp. 277-280)  The State filed its Return on March 2, 2002.  (App. p. 281)

The Honorable Diane S. Goodstein held an evidentiary hearing into the matter on January 12, 2004, at the Dorchester County Courthouse.  (App. pp. 287-357)  Petitioner was present at

the hearing and represented by Henry R. Schlein, Esquire and Norbert Cummings, Esquire. Assistant Attorney General J. Hagood Hamilton, Jr., represented the State.  Petitioner testified on his behalf, and his trial counsel, Mr. Dukes, testified on behalf of the State.  On October 24, 2005, Judge Goodstein denied the Petitioner's application for post-conviction relief by written order.  (App. pp. 359-365)

A timely notice of appeal was served and filed.  Robert M. Pachak, Assistant Appellate Defender of the South Carolina Office of Appellate Defense filed a *Johnson* Petition for Writ of Certiorari with the South Carolina Supreme Court, setting forth the sole ground for relief as follows:

> Whether defense counsel was ineffective in failing to move for a severance in petitioner's trial for two armed robberies?

*Johnson* Petition, p. 2.  The Petitioner made a *pro se* response.  On February 15, 2006, the South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals pursuant to SCACR Rule 227(1).  On June 8, 2007, the Court of Appeals entered its Order denying the petition and granting counsel's request to withdraw.  *Washington v. State*, Order (S.C. Ct. App. June 8, 2007).  The remittitur was entered on June 27, 2007.

## IV.  FEDERAL COURT HISTORY

The Petitioner is presently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC").  Petitioner filed this Petition for a writ of habeas corpus (the "Petition") on September 14, 2007 against the above-captioned Respondents, the State of South Carolina and Anthony Padula, Warden of Lee Correctional Institution (collectively, the "Respondents").[1]  [1]  In his *pro se* Petition, Petitioner has raised the following grounds for relief:

---

[1]    In *habeas corpus* cases, the Petitioner has the benefit of the holding in *Houston v. Lack,* 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.  In this case, the court has examined the envelope attached to Petitioner's Petition and has determined that the Petition was delivered to the correction institution mailroom on September 14, 2007.

Ground One:   Trial counsel was ineffective in failing to object to the jury charge on reasonable doubt.

  Supporting Facts:  During the jury charge of petitioner's trial, the trial judge charged the jury on proof beyond a reasonable doubt and counsel did not object. Charge was not on reasonable doubt.

Ground Two:   Trial counsel was ineffective assistance in failing to request a lesser included offense.

  Supporting Facts:  All of the evidence presented at petitioner's trial was circumstantial and called for a lesser included offense. Counsel did not request that.

Ground Three:  Trial counsel was ineffective in failing to move for a severance in petitioner's trial for two armed robberies.

  Supporting Facts:  Petitioner was charged with two armed robberies. During the trial, both of the charge were tried as one. Counsel did not move to try the charges separately.

Ground Four:   Trial counsel was ineffective for failing to investigate and object to petitioner's sentencing that it violates the ex post facto clause.

  Supporting Facts:  Petitioner was charged under one statue that offered parole eligibility, earned work credits, etc. and was sentenced under another statute that denies these benefits, increasing his punishment. Counsel did not object nor investigate petitioner's sentencing that violates the ex post facto clause.

(Habeas Petition [1]).

On September 21, 2007, the undersigned issued an Order which informed all parties that Petitioner had the benefit of the holding of *Houston v. Lack* with respect to the filing date of the Petition. The Order also authorized service upon the Respondents, apprised the Respondents of the deadline for filing dispositive motions, and notified Petitioner of the change of address rule. [5] Thereafter, after requesting and receiving an extension of time, the Respondents filed their Motion for Summary Judgment, and their Return and Memorandum to the Petition on December 16, 2007. [14, 15] Accordingly, the undersigned issued an Order filed on December 17, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying the Petitioner of the summary judgment dismissal procedure and the possible consequences if he failed to respond

adequately to the Respondents' Return.  [16]  On January 7, 2008, Petitioner filed his Response

to the Respondents' motion for summary judgment.  [17]

## V.  DISCUSSION

### A.  Timeliness of the Petition

Petitioner filed his petition on September 14, 2007.  Therefore, the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case.  *Lindh v.*

*Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615

(4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998),

*cert. denied*, 525 U.S. 1090 (1999).  This court has reviewed the pleadings and various

documents filed by the Petitioner and has determined that the Petition is timely under the

AEDPA.

### B.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his

state court remedies:  "It is the rule in this country that assertions of error in criminal

proceedings must first be raised in state court in order to form the basis for relief in *habeas*.

Claims not so raised are considered defaulted."  *Breard v. Green*, 523 U.S. 371, 375 (1998),

*citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).  The theory of

exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas

petitions.  *See generally, O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1

(1999).  The court's exhaustion requirements under Section 2254 are explained in *Matthews v.*

*Evatt*, 105 F.3d 907, 910-911 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.

The exhaustion requirement, though not jurisdictional, is strictly enforced[.]  (Citations omitted)

Thus, if claims were never reviewed by the highest court in South Carolina, those claims will be barred and cannot be considered by the Court.  A claim is unexhausted unless the substance of a petitioner's claims are "fairly presented" to the state courts, *Matthews v. Evatt*, 105 F.3d at 911, or no state remedy remains available.  *Id.*  To fairly present a claim, a petitioner must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (*citing Picard v. Connor*, 404 U.S. 270, 271 (1971)).

To satisfy the exhaustion requirement, a habeas petition must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.  The exhaustion requirement, though not jurisdictional, is strictly enforced.  *Matthews v. Evatt*, 105 F.3d at 910-11 (citations omitted).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction.  The first method involves a direct appeal and, pursuant to state law, a petitioner is required to state all his grounds in that appeal.  *See* SCAR 207 *and Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160.  The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal.  *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b).  A PCR applicant is also required to state all of his grounds for relief in his application.  *See* S.C. Code Ann. § 17-27-90.  "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review."  *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428.  As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.  *In*

*Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A claim that has been procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition. A federal court will hear a procedurally defaulted claim only if the petitioner " 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice.' " *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir.2003)

In the present case, Petitioner has exhausted his state remedies. Respondents concedes that the Petitioner has exhausted his state remedies with the disposition his PCR appeal to the South Carolina Supreme Court presented under *Johnson v. State*.[2] *See generally*, S.C.Code Ann. § 17-27-100 (1985); *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993); Rule 203, SCACR. As set forth below, the Petitioner either raised or had the opportunity to raise each of his claims in his application for PCR. Accordingly, this Petition is not subject to dismissal in order to continue the pursuit of available state remedies as there are none due to the state statute of limitations and successive application rule.

### C.  Scope of Review

---

[2]     *See* Return at p. 12.

This Court's review of collateral attacks on state criminal convictions is governed by the parameters set forth in the AEDPA, which amended Section 2254. Under the AEDPA, the state court's adjudication of a petitioner's claims on their merits is accorded deferential review. *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007). A federal court may only grant habeas corpus relief under Section 2254(d) with respect to a claim adjudicated on its merits in a state court proceeding if that state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Daniels v. Lee*, 316 F.3d 477, 485 (4th Cir. 2003), *quoting* 28 U.S.C. §§ 2254(d)(1) & (2); *see also Byram v. Ozmint*, 339 F.3d 203 (4th Cir. 2003).

With respect to the first prong of the analysis, the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413. An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled. *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.). Yet, as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly.   Rather, that application must also be unreasonable." *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied,* 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411.

Turning to the second prong of the analysis, Section 2254(d)(2)'s determination of whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1).  The federal courts must accord "considerable deference in their review of state habeas proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Thus, even if an error were identified in the record, "the habeas petitioner will be entitled to relief only if the habeas court is 'in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Jones v. Polk*, 401 F.3d 257, 265 (4th Cir. 2005), *quoting O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation marks and citation omitted).  As *Jones* explains, "[t]he proper inquiry is not 'merely whether there was enough to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had substantial influence.  If so, or if one is left in grave doubt, the conviction cannot stand.'" *Jones*, 401 F.3d at 265, *quoting Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

When Congress crafted this deferential standard of review in the AEDPA, it was at least partially motivated "to limit federal intrusion into state criminal adjudications." *(Michael) Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).  As Judge Wilkinson observed in *Lovitt*, "[i]t is, after all, the job of state courts to faithfully apply federal law.  U.S. Const., Art. VI, cl. 2.  Their efforts in this regard are to be respected as the acts of

sovereign entities, whose sworn allegiance to the Constitution and the laws of the United States is as solemn as our own." *Lovitt*, 403 F.3d at 178.

### C.  Discussion of Petitioner's Grounds for Habeas Corpus Relief

Ground One:        Trial counsel was ineffective in failing to object to the jury charge on
                   reasonable doubt.

Supporting Facts:  During the jury charge of petitioner's trial, the trial judge charged the jury
                   on proof beyond a reasonable doubt and counsel did not object.  Charge
                   was not on reasonable doubt.

Petitioner first contends he received ineffective assistance of counsel when counsel failed

to object to the reasonable doubt instruction.  The record reveals that at the beginning of the trial

Judge Brown explained to the jury:

> . . . Now to these indictments, Mr. Washington pleads not guilty.  And sitting at that table,
> as I told you earlier , he's just as innocent as you and I, unless and until the state can
> satisfy 12 of you his guilt beyond a reasonable doubt.  Because it would be your duty to
> find him not guilty if you have a reasonable doubt.  Well, what is reasonable doubt?  It's
> not some kind of fanciful doubt, some kind of imaginary doubt, you could have that doubt
> about anything.  Use those words"reasonable doubt" like you in your everyday affairs.
> And I'll tell you more about it later on. . . .

App.p. 35, ll. 3-17.  At the conclusion of the trial, Judge Brown's jury instructions on reasonable

doubt consisted of the following:

> And what we went through and what we are about to complete, is to determine if the state
> can satisfy 12 of you of his guilt beyond a reasonable doubt.  Because a person is
> presumed to be innocent and if you have a reasonable doubt it would be your duty to find
> him not guilty.
>
> Well what's a reasonable doubt.  You remember at the beginning of the case I told you to
> use those words reasonable doubt like you would in your everyday affairs.  And when I
> asked you to hold up your hand whether you served on a jury before, several of you held
> up your hand.  And if those several served as jurors in civil cases, that's where people sue
> you for money or contracts, automobile accident, those kind of things, you were told that it
> was only necessary to prove that a fact was more likely than not.
>
> Well in criminal cases the proof is more powerful, it's beyond a reasonable doubt.  Proof
> beyond a reasonable doubt is proof that leaves you firmly convinced if the defendant's
> guilt.
>
> Now we know that there are very few things in this world that we know with absolute
> certainty, and in a criminal case the law does not require proof that overcomes every
> possible doubt.  If, based on your consideration of the evidence, you are firmly convinced
> that the defendant is guilty, you must find him guilty.  On the other hand, if you think
> there's a real possibility that he's not guilty, then you must give him the benefit of that

doubt and find him not guilty.  And, of course, reasonable doubt can exist from evidence in the case or lack of evidence, you alone make that determination whatever amount of reasonable doubt exists. . .

(App.p. 190, l. 17- p. 192, l. 9)  Neither counsel objected to the instruction.  (App.p. 203, l. 2-7)

In his *pro se* application for post conviction relief in ground 20(a), Washington alleged that trial counsel was ineffective when he failed to object to the jury charge on reasonable doubt where the court charged "proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt."  (App.p. 269, Section 20(a)).  Washington argued that this charge on reasonable doubt is a burden shifting definition of reasonable doubt.  Relying on *State v. Manning*, 305 S.C. 413, 409 S.E.2d 373 (1991), Washington argued that the judge should not give a further instruction other than that a reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act.  (App.p. 260)

During the PCR hearing, Washington testified that he felt counsel was ineffective in failing to object to the jury charge on reasonable doubt where the court charged that proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt and again contended it shifted the burden of proof.  (App.p. 323, ll. 14-22)  No testimony was received from his trial counsel, Dukes, on this issue.  A review of the PCR court's order reveals that this issue was not specifically addressed in the order.  (App.p. 359-365)

It appears to the court that this issue is procedurally barred from habeas consideration.  Although presented at the hearing, it was not addressed by Judge Goodstein in the PCR order.  The Petitioner did not raise this issue in a Rule 59 motion, as required by state procedure.  When a federal habeas petitioner fails to comply with a state procedural rule during state post-conviction relief proceedings, and that failure provides an adequate and independent ground for a state's denial of relief, federal review is barred if the state court expressly relied on the procedural default in denying relief.  *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct.2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d308 (1989).  In determining whether the state supreme court expressly relied on the

procedural ground in denying relief, the court must apply the plain statement rule, under which federal habeas review is only barred if the last state court to which petitioner presented his federal claims "clearly and expressly rel[ied]" on state procedure in denying habeas relief, and that state procedure provided "an independent and adequate state ground" for denying relief. *Smith v. Dixon*, 14 F.3d 956 (4th Cir. 1994) (en banc).

The plain statement rule is inapplicable, however, when the claim was not presented to the highest state court with jurisdiction to decide it. *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546. Under those circumstances, a federal court will refuse to hear a claim if it is clear that the claim would have been procedurally barred had it been presented to the highest state court. *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990).

As a matter of general appellate procedure in South Carolina, to preserve an issue for review, parties are required to make sure that the lower court's final judgment reflects a ruling on the particular issue. *Pruitt v. State*, 310 S.C. 254, 423 S.E.2d 127, 128 n. 2 (S.C. 1992). If the final judgment does not contain such a ruling, parties are usually required to file a motion to amend judgment pursuant to S.C.R.Civ.P. 59(e). *Id.* In the specific context of post-conviction relief, however, S.C. Code Ann. § 17-27-80 (Law. Co-op.1976) requires a PCR court to "make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented" to it. In *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present. Counsel is required to file the *Johnson* petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal. A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the *Johnson* petition. The applicant may file a prose brief raising additional issues. *Foster v. State*, 298 S.C. 306, 379 S.E.2d 907 (1989). In ruling on a *Johnson* petition for writ of certiorari, the South Carolina Supreme Court or Court of

Appeals necessarily considers the issue or issues raised in the *Johnson* petition and any issues raised by the applicant in his pro se brief.  Moreover, the South Carolina Supreme Court conducts a review of the record when a *Johnson* petition is filed.  *King v. State*, 308 S.C. 348, 417 S.E.2d 868 (1992).  However, in so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented <u>and</u> ruled on by the PCR court.  The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria.  Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR.  *See* S.C. Code Ann. §17-27-80 and S.C.R.Civ. P. 52(a); *Bryson v. State*, 328 S.C. 236, 493 S.E.2d 500 (1997).  Counsel is required to object to any deficiencies in the order of the PCR court. *McCullough v. State*, 320 S.C. 270, 464 S.E.2d 340 (1995).  This duty falls on the PCR applicant if not raised by counsel in the *Johnson* petition.  *See Pruitt v. State*, 310 S.C. 254, 423 S.E.2d 127, 128 n. 2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review.").  *See also, Padgett v. State*, 324 S.C. 22, 484 S.E.2d 101 (1997)(issues not specifically ruled on by PCR court are not preserved for appeal).  In summary, when considering a *Johnson* petition, the South Carolina Supreme Court considers only those issues raised by the *Johnson* petition, raised in any *pro se* brief or petition filed by the applicant, and only those issues specifically ruled on by the PCR court.

To conclude, a review of the PCR order reveals that this claim was not addressed in the Order of Judge Goodstein and that there was no Rule 59 motion after the denial.  This adequate and independent state ground bars consideration of the claim.

Even so, Washington's counsel was not deficient in failing to object to the jury charge, and the omission did not result in Sixth Amendment prejudice because it did not shift the burden of proof.  The standard for reviewing the trial judge's charges on reasonable doubt has evolved since 1990.  *In Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (*per curiam*), the United States Supreme Court held for the first time that a trial judge's reasonable

doubt charge violated the Due Process Clause because it diminished the high burden that the Due Process Clause requires that the state must establish.  The Court found that the appropriate standard for determining the constitutionality of a reasonable doubt charge is whether "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required of the Due Process Clause."  *Id.* at 41, 111 S.Ct. at 329 (emphasis added).

In 1991, the South Carolina Supreme Court adopted the *Cage* "could have" standard in *State v. Manning*, 305 S.C. 413, 409 S.E.2d 372 (1991), the case upon which Washington relied. The Court ruled a reasonable doubt jury charge unconstitutional because the judge equated reasonable doubt with a "moral certainty" standard and used a definition of circumstantial evidence which required the jury to "seek some reasonable explanation of the circumstances proven other than the guilt of the [d]efendant and if such reasonable explanation can be found [the jury] would find the [d]efendant not guilty."  *Id.* at 416, 409 S.E.2d at 374.  The Court found that the jury charge was so confusing that a reasonable juror "could have" found the defendant guilty based on a standard that did not reach the level of proof encompassed by the reasonable doubt standard that is mandated by the Due Process Clause.  *Id.* at 416-417, 409 S.E.2d at 374-375.

The United States Supreme Court redefined the reasonable doubt standard in less restrictive terms in *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). The new standard became whether there was a " reasonable likelihood " that the jury applied the charge in an unconstitutional manner.  *Boyde*, 494 U.S. at 380, 110 S.Ct. at 1198.  Writing for the United States Supreme Court in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct.1239, 127 L.Ed.2d 583 (1994), Justice O'Connor pointed out that *Cage* is the only case in which the Supreme Court declared a reasonable doubt charge unconstitutional.  The *Cage* charge was as follows:

> [A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture.  *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence

> or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*

Id. at 5-6, 114 S.Ct. at 1243 (*quoting Cage*, 498 U.S. at 40, 111 S.Ct. at 329) (emphasis added by the U.S. Supreme Court in *Cage*). Justice O'Connor stated that the emphasized language is what the Court in *Cage* found offensive to due process. She then wrote for the Court:

> In a subsequent case, we made clear that the proper inquiry is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it. *Estelle v. McGuire*, 502 U.S. 62, 72 *and* n. 4, 112 S.Ct. 475, 482 *and* n. 4, 116 L.Ed.2d 385 (1991). The constitutional question in the present cases, therefore, is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* [reasonable doubt] standard.

*Id*. at 6, 114 S.Ct. at 1243 (emphasis in the opinion). The *Victor* opinion then provided a comprehensive review of the use of the phrases "moral certainty" and "substantial doubt" in the American jurisprudence of reasonable doubt charges. The Court analyzed challenged charges from Nebraska and California in which these phrases were used and found that neither of the phrases automatically rendered a reasonable doubt charge constitutionally defective. The Court held:

> The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires. In these cases, however, we conclude that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). There is no reasonable likelihood that the jurors who determined petitioners' guilt applied the instructions in a way that violated the Constitution.

*Id*. at 22-23, 114 S.Ct. at 1251.

The South Carolina Supreme Court adopted the *Victor* "reasonable likelihood" standard in 2000 in *State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000). Accordingly, applying that standard to this matter it is clear the instruction did not dilute the concept of reasonable doubt.

Furthermore, jury charges should be examined in their entirety and not in isolation in analyzing whether the defendant's due process rights have been violated. *State v. Smith*, 315

S.C. 547, 446 S.E.2d 411 (1994). A complete review of the jury instruction in this case evinces an appropriate charge of the reasonable doubt standard. Respondent asserts that the trial judge's careful and exhaustive articulation of the reasonable doubt standard, when examined in its entirety, effectively communicated the high burden of proof that the state was required to establish by the Constitution. *See, Victor*, *supra*; *Todd v. State*, 355 S.C. 396, 398-403, 585 S.E.2d 305, 306-309 (S.C. 2003). Washington's attorney was not deficient in 2000 in failing to object.

## **GROUND TWO**

Ground Two:     Trial counsel was ineffective assistance in failing to request a lesser included offense.

Supporting Facts:     All of the evidence presented at petitioner's trial was circumstantial and called for a lesser included offense. Counsel did not request that.

In his second allegation, Petitioner contends that counsel failed to request a lesser included instruction, although he does not particularize what offense he claims counsel should have requested. During the PCR hearing, he stated that the request should have been for common law robbery. (App. pp. 305-306) Counsel testified that he did not think it would been applicable. A review of the PCR Order reveals that this issue was not addressed. Again, no Rule 59 motion was made. As with Ground One, the entire matter must be dismissed because of the adequate and independent state ground barring habeas consideration.

In the alternative, the Petitioner failed in his burden of proof. Testimony at trial revealed that the perpetrator was armed with a 12 gauge double barrel shotgun when the robbery was committed. (App. pp. 69-70) There was no evidence that the perpetrator was unarmed. "For the defendant to be entitled to a lesser-included offense [instruction], the proof on the element that differentiates the two offenses must be sufficiently in dispute to allow a jury consistently to find the defendant innocent of the greater and guilty of the lesser offense." *United States v. Baker*, 985F.2d 1248, 1258-59 (4th Cir. 1993).

While upon indictment for a greater offense a trial court has the requisite jurisdiction to charge and convict a defendant of any lesser included offense, *see Browning v. State*, 320 S.C.366, 465 S.E.2d 358 (1995), *overruled in part on other grounds by State v. Gentry*, 363 S.C. 93,610 S.E.2d 494 (2005); *State v. Patterson*, 337 S.C. 215, 233, 522 S.E.2d 845, 854(Ct. App. 1999); *Tyndall*, 336 S.C. at 21, 518 S.E.2d at 285, a lesser included offense instruction is required only when the evidence warrants such an instruction. *State v. Mitchell*, 362 S.C. 289,301, 608 S.E.2d 140, 143 (Ct. App. 2005); *State v. Coleman*, 342 S.C. 172, 175 536 S.E.2d 387,389 (Ct. App. 2000). "The law to be charged is determined by the evidence <u>presented</u> at trial." *State v. Gourdine*, 322 S.C. 396, 398, 472 S.E.2d 241 (1996) (citation omitted; emphasis added); *accord*, *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct. App. 2004); *State v. Todd*, 290 S.C. 212, 214,349 S.E.2d 339, 341 (1986). To justify charging the lesser crime, the evidence presented must allow a rational inference the defendant was guilty only of the lesser offense. *See Tyndall*, 336 S.C. at 22, 518 S.E.2d at 285. The court looks to the totality of evidence in evaluating whether such an inference has been created. *See id.* (in deciding whether the evidence tended to show the defendant was guilty of the lesser included offense, the court looked at the "reasonable inference[s] to be drawn from the totality of the evidence"). The trial court should refuse to charge the lesser included offense when there has been no evidence tending to show the defendant may have committed solely the lesser offense. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996); *State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994).

Washington's trial counsel was correct and reasonably competent under *Strickland* in his assessment that there were no applicable lesser included offenses based upon the testimony. Petitioner's second issue is without merit.

## GROUND THREE

Ground Three:    Trial counsel was ineffective in failing to move for a severance in petitioner's trial for two armed robberies.

Supporting Facts:   Petitioner was charged with two armed robberies.  During the trial, both of the charge were tried as one.  Counsel did not move to try the charges separately.

In his third allegation, Petitioner contends that counsel was ineffective in failing to request a severance of the two robbery charges.  The only evidence at the PCR hearing was the testimony that his attorney did not move for a severance.  (App. p. 345)  As with the other two grounds, this claim was not specifically addressed in the order and no Rule 59 motion was made. As with Grounds One and Two, it is barred.

Even if it were not procedurally barred, Petitioner failed in his burden of proof.  He was not entitled to a severance of the charges as a matter of law because both charges were factually intertwined and would have been admissible had each been tried separately.  The crimes occurred on the same night in the same vicinity by an individual wearing the same clothes.  If an objection had been made if would have been denied because no prejudice was shown to the defendant's rights by the joined trial.  Several factors must be considered when deciding whether the trial court's consolidation of charges was proper.  Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place and character, the trial judge has the power, in his discretion, to order the indictments tried together if the defendant's substantive rights would not be prejudiced.  *State v. Cutro*, 365 S.C. 366, 618 S.E.2d 890 (2005); *State v. Smith*, 322 S.C. 107, 470 S.E.2d 364 (1996); *State v. Simmons*, 352 S.C. 342, 573 S.E.2d 856 (Ct. App. 2002); *State v. Jones*, 325 S.C. 310, 479 S.E.2d 517 (Ct. App. 1996); see also *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 1981) (noting where offenses charged in separate indictments are of same general nature, involving connected transactions closely related in kind, place and character, trial judge has authority, in his discretion, to order indictments tried together over objection of defendant absent showing that defendant's substantive rights were violated); *McCrary v. State*, 249 S.C. 14, 36,152 S.E.2d 235, 246 (1967) (stating "[t]he two offenses were of the same general nature, involving connected transactions closely related in time, place and character; and the trial judge had power,

in his discretion, to order them tried together over objection by the defendant in the absence of a

showing that the latter's substantive rights would have been thereby prejudiced.").  Washington's

trial attorney was correct under the 6th Amendment in not objecting to the joint trial.  Washington

cannot prove deficient performance or prejudice under *Strickland*.

## GROUND FOUR

Ground Four:          Trial counsel was ineffective for failing to investigate and object to
                      petitioner's sentencing that it violates the ex post facto clause.

Supporting Facts:     Petitioner was charged under one statue that offered parole eligibility.,
                      earned work credits, etc. and was sentenced under another statute that
                      denies these benefits, increasing his punishment.  Counsel did not object
                      nor investigate petitioner's sentencing that violates the ex post facto
                      clause.

In his final ground for habeas corpus relief, Washington contends that his trial counsel

should have investigated and objected to his sentence.  He claims that he is entitled to parole for

armed robbery because Section 16-11-330(A) states in part:  "A person convicted under this

subsection is not eligible for parole until the person has served at least seven years of the

sentence."  Petitioner's argument, however, ignores the subsequently passed no parole offense

provisions of Section 16-1-90.  Pursuant to S.C. Code Ann. § 16-1-90 (2003 & Supp.2005), all

criminal offenses are classified according to the maximum sentence which can be imposed for

the offense.  The offenses are divided into felonies and misdemeanors and the felonies are

further classified as A, B, or C.  A Class A felony carries a maximum sentence of thirty (30)

years.  Pursuant to S.C. Code Ann. § 24-13-100 (Supp.2004), passed and effective in 1995, all

Class A, B, and C felonies are classified as no parole offenses.  Pursuant to S.C. Code Ann. §

2-13-66 (2005), the Code Commissioner is "to place crimes and offenses in the appropriate

category as established by the General Assembly " in Section 16-1-90.  S.C. Code Ann. §

2-13-66.  "The Code Commissioner is specifically prohibited from changing the designation by

the General Assembly of any crime or offense from felony to misdemeanor or from

misdemeanor to felony and is likewise prohibited from changing the number of years of any

sentence set by the General Assembly." *Id.* Armed robbery is a crime set out in Section 16-11-330. According to 16-1-90, it is defined as a class A felony. Therefore, prior to the time of the crime it was a defined no parole offense. Counsel could not have objected to the use of Section 16-1-90 and 24-13-100 because state law was clear. Petitioner's fourth ground for relief is without merit.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's Petition **[1] be dismissed**, and that Respondents' motion for summary judgment **[15] be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

April 7, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).